Christopher S. Porrino, Esq.
Barry T. Albin, Esq.
Kent D. Anderson, Esq.
Wayne W. Fang, Esq.
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500
*Attorneys for Plaintiff Kyocera Document Solutions America, Inc.*

**RECEIVED**

**JUL 2 8 2023**

AT 8:30_____M
**CLERK, U.S. DISTRICT COURT - DNJ**

<div align="center">

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

</div>

| | |
|---|---|
| KYOCERA DOCUMENT SOLUTIONS AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> DIVISION OF ADMINISTRATION, NEW JERSEY DEPARTMENT OF THE TREASURY, AMANDA TRUPPA, in her Official Capacity as Director of the Division of Administration, DIVISION OF PURCHASE AND PROPERTY, NEW JERSEY DEPARTMENT OF THE TREASURY, and AMY F. DAVIS, in her Official Capacity as Acting Director of the Division of Purchase and Property, <br><br> Defendants. | Civil Action No.: <br><br><br> **VERIFIED COMPLAINT** |

Plaintiff Kyocera Document Solutions America, Inc. ("Plaintiff" or "Kyocera America"), by and through its undersigned attorneys, hereby alleges the following by way of Verified Complaint against Defendant Division of Administration, New Jersey Department of the Treasury ("Defendant Division of Administration"), Defendant Amanda Truppa, in her official capacity as Director of the Division of Administration ("Defendant Truppa"), Defendant New Jersey Division of Purchase and Property, Department of the Treasury ("Defendant DPP"), and Defendant Amy

F. Davis, in her official capacity as Acting Director of the Division of Purchase and Property ("Defendant Davis") (collectively, "Defendants"):

## INTRODUCTION

1.      Kyocera America is a United States corporation, which has been headquartered in New Jersey for over forty years and provides multifunction printer-related equipment and copying services to the State of New Jersey.

2.      Kyocera America's corporate parent, Kyocera Document Solutions Inc. ("Kyocera Japan"), is a Japanese multinational company that co-owns a Russia-based subsidiary with Kyocera Document Solutions Europe B.V. ("Kyocera Europe"). Kyocera America has no interest in or business relationships with that Russian subsidiary or in Russia.

3.      After Russia's illegal invasion of Ukraine, Congress enacted and the President implemented a series of escalating economic sanctions against Russia and Belarus. Federal law does not prohibit an entity headquartered in the United States, whose parent company owns or controls a Russian entity, from doing business in this country. None of the federal sanctions prohibit Kyocera America from doing business with any state government. Further, Kyocera Japan and Kyocera Europe are in compliance with all European sanctions against Russia.

4.      In response to Russia's aggression against Ukraine, the New Jersey Legislature passed N.J.S.A. 52:32-60.1 (the "New Jersey Act" or "Act") – that imposes economic sanctions more far-reaching than federal sanctions. The New Jersey Act prohibits "any entity," such as Kyocera America, "under common ownership and control" of a parent company that has a subsidiary based in Russia "from entering into or renewing "a contract with a State agency for the provision of goods or services." N.J.S.A. 52:32-60.1e.

5.      Federal law permits what the New Jersey Act prohibits – Kyocera America from doing business with government agencies in this State.

6.     The United States Constitution delegates to the Congress the power to regulate foreign commerce and to the President the power to conduct foreign affairs. *See* U.S. Const. art. I, § 8, cl. 3, art. VI, cl. 2.

7.     The New Jersey Act, as applied to Kyocera America, violates those constitutional provisions by interfering with the series of finely crafted and graduated economic sanctions imposed by the federal government against Russia. The United States Constitution's Supremacy Clause, U.S. Const. art. VI, cl. 2, preempts New Jersey from conducting its own foreign policy and regulating foreign commerce at odds with the means chosen by the federal government.

8.     Kyocera America is fully compliant with federal law *and* opposes Russia's war of aggression against Ukraine. Nevertheless, based on the New Jersey Act, Defendants are canceling (or not renewing) Kyocera America's existing State contract, which expires on August 11, 2023, and refusing to enter into a new contract; barring Kyocera America from entering into or bidding on future State contracts; and placing Kyocera America on a public list of entities engaging in "prohibited activities" in Russia or Belarus.

9.     By refusing to renew Kyocera America's existing State contract and barring it from entering into new ones based on the New Jersey Act, Defendants may also impair Kyocera America's ability to do business with other state governments and will falsely brand Kyocera as somehow complicit in a war it condemns.

10.    The enforcement of the unconstitutional provisions of the Act against Kyocera America will cause it irreparable and immeasurable harm.

11.    Kyocera America brings this action to enjoin Defendants' enforcement of those unconstitutional provisions of the New Jersey Act, as applied to Kyocera America.

12.     Accordingly, Kyocera America also seeks, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, an Order declaring that Defendants' enforcement of the New Jersey Act is unconstitutional, as applied against Kyocera America.

## PARTIES

13.     Kyocera America is a corporation organized and incorporated under the laws of the State of California.

14.     Kyocera America's principal place of business is located at 225 Sand Road, Fairfield, New Jersey 07004.

15.     Kyocera America is a leading supplier of computer-connectable document imaging and document management systems, including multifunction printers, digital laser facsimiles, wide format imaging products, and applications and networking solutions throughout the United States. Kyocera America is also responsible for operations, technical support, service, training, sales, marketing, and distribution of Kyocera's products.

16.     Kyocera America does significant business in the State of New Jersey, including as a vendor to municipalities and government entities throughout the State.

17.     Defendant Division of Administration is an agency of the State of New Jersey within the New Jersey Department of the Treasury (the "Department of Treasury"). Its address is P.O. Box 211, 50 West State Street, 8th Floor, Trenton, New Jersey 08625.

18.     Defendant Division of Administration has been delegated by the Department of Treasury, the responsibility to create and maintain a list of entities engaging in "prohibited activities" in the Russian Federation and Republic of Belarus in enforcing the New Jersey Act. *See* N.J.S.A. 52:32-60.1b.

19. Defendant Truppa is the Director of Defendant Division of Administration. Defendant Truppa's public address is P.O. Box 211, 50 West State Street, 8th Floor, Trenton, New Jersey 08625.

20. In her official capacity, Defendant Truppa has the responsibility to create and maintain a list of entities engaging in "prohibited activities" in the Russian Federation and Republic of Belarus in enforcing the New Jersey Act. *See id.*

21. Defendant DPP is an agency of the State of New Jersey within the Department of Treasury. Its address is P.O. Box 230, Trenton, New Jersey 08625.

22. Defendant DPP has been delegated by the Department of Treasury, the responsibility to procure, negotiate and renew state contracts with private entities, such as Kyocera America. *See* N.J.S.A. 52:18A-3; N.J.A.C. 17:12-1.1.

23. Defendant Davis is the Acting Director of Defendant DPP. Defendant Davis's public address is P.O. Box 230, Trenton, New Jersey 08625.

24. In her official capacity, Defendant Davis has the responsibility to procure, negotiate and renew state contracts. *See id.*

## JURISDICTION AND VENUE

25. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises out of violations of the United States Constitution, U.S. Const. art. VI, cl. 2; art. I, § 8, cl. 3, and the laws of the United States, 28 U.S.C. § 2201.

26. This Court has personal jurisdiction over Defendants because they (a) are Officers or Agencies of the Government of the State of New Jersey; (b) maintain their principal place of business in the State of New Jersey; and (c) are responsible for enforcing State laws that give rise to this suit within New Jersey's territorial boundaries.

27.     This judicial district is the proper venue for this action, pursuant to 28 U.S.C. § 1391(b) and (c), because the events, acts or omissions giving rise to Kyocera America's claims have mainly occurred in this district.

## FACTS COMMON TO ALL COUNTS

**A.     The Russian Federation Invades Ukraine.**

28.     On February 24, 2022, the Russian Federation launched an illegal and unprovoked full-scale invasion of the sovereign state of Ukraine.

29.     This invasion was the culmination of a lengthy Russian campaign to undermine the sovereignty of Ukraine, a campaign that began with the annexation of Crimea in 2014 and continued through nearly eight years of continuous war in Eastern Ukraine.

30.     The President of the United States condemned Russia's illegal invasion – as did federal and state elected officials and the people of this country. The President and a coalition of other world leaders signaled that their nations would provide material support and resources to Ukraine so that it could defend its territorial sovereignty against Russian aggression and the right of its people to govern themselves.[1]

**B.     The Federal Government's Response To The Russian Invasion Of Ukraine And Russian Harmful Foreign Activities.**

31.     Before the invasion, the United States had imposed a comprehensive and escalating set of sanctions against the Russian Federation because of its illegal annexation of Crimea in 2014; its efforts to undermine our country's democratic elections and institutions and national security,

---

[1] *See Statement by President Biden on Russia's Unprovoked and Unjustified Invasion of Ukraine*, The White House (Feb. 23, 2022), https://www.whitehouse.gov/briefing-room/statements-releases/2022/02/23/statement-by-president-biden-on-russias-unprovoked-and-unjustified-attack-on-ukraine/.

as well as those of allied nations; its international malicious cyber-activities; and its violation of the territorial integrity of nation states.[2]

32.     In 2014 and 2021, Congress imposed federal sanctions against Russia pursuant to the International Emergency Economic Powers Act. *See* 50 U.S.C. §§ 1701–09.

33.     To implement the International Emergency Economic Powers Act, Congress delegated power to the Executive Branch, which established a web of regulations to govern commerce with Russia. *See* 31 C.F.R. pts. 587, 589.

34.     Those regulations are enforced by the Office of Foreign Assets Control ("OFAC"), a branch of the United States Department of the Treasury.[3]

35.     In response to Russia's 2022 full-scale invasion of Ukraine, President Biden, relying on pre-existing statutory powers, Executive Orders, and the OFAC regulatory scheme, imposed a new set of comprehensive sanctions on Russia and Belarus.

36.     Through extensive diplomacy, President Biden organized a multilateral response to the Russian aggression by "building a coalition of partners representing well more than half of the global economy," including twenty-seven members of the European Union as well as such countries as the United Kingdom, Canada, Japan, Australia, and New Zealand.[4]

---

[2] *See, e.g.*, Exec. Order No. 13,660, 70 Fed. Reg. 46 (2014); Exec. Order No. 13,661, 79 Fed. Reg. 53 (2014); Exec. Order No. 13,662, 79 Fed. Reg. 56 (2014); Exec. Order No. 13,685, 79 Fed. Reg. 247 (2014); Exec. Order No. 14,024, 86 Fed. Reg. 20249 (2021).

[3] *See* Office of Foreign Assets Control, *Sanctions Programs and Information*, U.S. Dep't of the Treasury, https://home.treasury.gov/policy-issues/office-of-foreign-assets-control-sanctions-programs-and-information.

[4] *See Remarks by President Biden on Russia's Unprovoked and Unjustified Attack on Ukraine*, The White House (Feb. 24, 2022), https://www.whitehouse.gov/briefing-room/speeches-remarks/2022/02/24/remarks-by-president-biden-on-russias-unprovoked-and-unjustified-attack-on-ukraine/.

37. On February 21, 2022, President Biden, in coordination with United States' allies, issued Executive Order 14065, barring economic activity with those parts of Ukrainian territory that are illegally occupied.[5]

38. Subsequently, President Biden issued Executive Order 14071, barring new investment by "United States person[s]" in the Russian Federation and delegating to the Secretaries of State and United States Department of the Treasury the power to designate certain sectors of the Russian economy as off-limits to United States commerce.

39. A United States person is defined as: "any United States citizen, lawful permanent resident, entity organized under the laws of the United States or any jurisdiction within the United States (including foreign branches), or any person in the United States." 31 C.F.R. § 587.314.

40. In exercising their powers, the Secretaries of State and United States Department of the Treasury barred United States commerce with a multitude of sectors of the Russian economy: defense, energy, accounting, financial, corporate formation, trusts, professional consulting services, architecture, engineering, construction, manufacturing, and transportation. *See, e.g.*, 31 C.F.R. § 589.201(a)(1)–(6).

41. The Secretaries of State and United States Department of the Treasury also prohibited transactions with specific individuals aiding the Russian war effort or playing a part in the destabilization of Ukraine. *See, e.g.*, *id.* § 589.201(a)(3).

42. The federal sanctions specifically target individuals with property interests in the United States who were complicit in undermining the democratic processes, threatening the territorial sovereignty, and misappropriating state assets of Ukraine. *Id.* § 589.201(a). The property

---

[5] Exec. Order No. 14,065, 87 Fed. Reg. 36 (2022).

interests of those culpable individuals "are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in." *Id.*

43.     The federal sanctions target specific culpable individuals and war-related industries as well as certain sectors of the Russian economy.

44.     Congress banned the importation of Russian oil into the United States. *See* Ending Importation of Russian Oil Act, Pub. L. No. 117-109, 136 Stat. 1154.

45.      Congress also suspended Russia's and Belarus' "most favored nation" trade status, which automatically imposed significant tariffs on Russian and Belarussian imports to the United States. *See* Suspending Normal Trade Relations with Russia and Belarus Act, Pub. L. No. 117-110, 136 Stat. 1159.

46.     The federal sanctions, however, are not a blanket ban on all commerce with Russia or Belarus.

47.     Although the OFAC has provided guidance on the prohibition of "new investment" in Russia by United States Persons, the guidance expressly states that certain business activities remain permissible, including:

> [e]ntry into, performance of, or financing of a contract, pursuant to ordinary commercial sales terms, to sell or purchase goods, services, or technology to or from an entity in the Russian Federation (*e.g.*, a payment of an invoice for goods, where payment is made within the contracted time period and such payment does not involve participation in royalties or ongoing profits);
>
> [m]aintenance of an investment in the Russian Federation [made prior to the prohibitions], including maintenance of pre-existing entities, projects, or operations, including associated tangible property in the Russian Federation . . . ; and
>
> [w]ind down or divestment of a pre-existing investment, such as a pre-existing investment in an entity, project, or operation, including

any associated tangible property, located in the Russian Federation
. . . ."[6]

48.     None of the congressional enactments or federal regulations imposing sanctions on Russia bar Kyocera America from doing business in the United States or with any state government or its agencies.

**C.     The New Jersey Legislature's Response To Russia's Invasion Of Ukraine.**

49.     On March 9, 2022, the New Jersey Legislature passed a law imposing its own set of sanctions on Russia and Belarus in response to the unprovoked invasion of Ukraine. N.J.S.A. 52:32-60.1.

50.     The sanctions imposed by New Jersey are more far-reaching than those imposed by federal law and regulations. United States companies operating in New Jersey, which are in full compliance with federal law, can nonetheless be subject to sanctions under the New Jersey Act.

51.     The New Jersey Act bans state agencies and governmental entities from contracting with any person or entity engaging in "prohibited activities" in Russia or Belarus. N.J.S.A. 52:32-60.1a.

52.     Under the Act, "prohibited activities" includes a company "being headquartered in Russia or having its principal place of business in Russia or Belarus." N.J.S.A. 52:32-60.1e.

53.     Under the Act, a "person or entity" is defined as "[a]ny parent, successor, subunit, direct or indirect subsidiary, or any entity under common ownership or control with, any [natural person, corporation, company, limited liability company, or business association]." N.J.S.A. 52:32-60.1e(1), -60.1e(3).

---

[6] *See* Office of Foreign Assets Control, *FAQ 1049. For the purposes of Russia-related Executive Order (E.O.) 14066, E.O. 14068, or E.O. 14071 (collectively, "the respective E.O.s"), what is meant by the term "new investment"?*, U.S. Dep't of the Treasury (June 6, 2022), https://ofac.treasury.gov/faqs/1049.

54.     Under the Act, a person who Defendants determine has "engage[d] in prohibited activities in Russia or Belarus shall be ineligible to and shall not":

> (1) enter into or renew a contract with a State agency for the provision of goods or services or the purchase of bonds or other obligations;
>
> (2) file or renew a Public Works Contractor Registration with the Department of Labor and Workforce Development;
>
> (3) be approved for or continue to receive an economic development subsidy from the Economic Development Authority in but not of the Department of the Treasury, be awarded a municipal property tax abatement, or make or enter into a payment in lieu of property tax agreement;
>
> (4) apply for or receive a tax clearance certificate from the Director of the Division of Taxation in the Department of the Treasury;
>
> (5) be certified by the Department of Community Affairs as an urban renewal entity for purposes of the 'Long Term Tax Exemption Law,' P.L.1991, c. 431 (C.40A:20-1 *et seq.*); and
>
> (6) be designated as a redeveloper by a public agency for the purpose of planning, replanning, construction, or undertaking of any project or redevelopment work in accordance with the 'Local Redevelopment and Housing Law,' P.L.1992, c. 79 (C.40A:12A-1, *et seq.*).

N.J.S.A. 52:32-60.1a(1)–(6).

55.     The New Jersey Act delegates primary responsibility for enforcing its provisions to Defendants.

56.     Defendant Division of Administration – pursuant to authority delegated to it by the Department of Treasury – is charged with creating and maintaining the list of persons, companies, and corporations, which are barred from engaging in contracts and activities with the State of New Jersey as set forth in N.J.S.A. 52:32-60.1a(1)–(6). *See* N.J.S.A. 52:32-60.1b.

57.     Defendant Truppa, as Director, is the head of Defendant Division of Administration.

58.     Defendant Truppa actively enforces provisions of the New Jersey Act by maintaining, updating, and publishing a list of entities engaged in "prohibited activities" in Russia or Belarus ("Prohibited Entity List").[7]

59.     The Prohibited Entity List currently contains many corporations doing business in Russia or Belarus, which are actively supportive of or engaged in the Russian war effort or tied to known Russian oligarchs.

60.     Defendant Truppa has determined that, under the New Jersey Act, a United States company doing business in New Jersey, even though it is not doing any business in Russia or Belarus, is involved in "prohibited activities" if its multinational parent company has a subsidiary in Russia.

**D.      The Impact Of The New Jersey State Sanctions Act On Plaintiff Kyocera America.**

*i.      Kyocera America Does Substantial Business In New Jersey And With The New Jersey Government.*

61.     Kyocera America is one of the leading suppliers of computer-connectable document imaging and document management systems, including multifunction printers, digital laser facsimiles, wide format imaging products, and applications and networking solutions throughout the United States and engages in substantial business in New Jersey. It does not engage in any business outside of the Americas.

62.     Kyocera America's corporate headquarters have been located in New Jersey for over forty years.

63.     Kyocera America and its subsidiaries employ over 200 employees in New Jersey and more than 1,000 employees overall throughout the United States. Kyocera America does

---

[7] *See* Memorandum from Amanda Truppa, New Jersey Dep't of the Treasury, *Entities Engaged in Prohibited Activities Under C.52:32-60.1* (May 8, 2023), https://www.nj.gov/treasury/administration/pdf/RussiaBelarusEntityList.pdf

business with approximately 500 independent dealers, more than 80% of which are independently owned small businesses.

64.     Kyocera America does a significant amount of business with government entities throughout the United States, including in New Jersey. Government entities are frequent purchasers of copiers, multifunction printer devices, and copying services.

65.     Kyocera America has twelve direct contracts with government entities across the United States. Kyocera America further has eighteen additional contracts with the government through its contract with the National Association of State Procurement Officials.

66.     In bidding for a government contract, Kyocera America must be in strict compliance with the applicable laws and regulations of the jurisdiction.

67.     Kyocera America has had government contracts with the State of New Jersey for at least twelve years.

68.     Kyocera America has held a Master Blanket Purchase Order contract – identified as contract number G2075 and purchase order number 40465 (the "Contract") – with the State of New Jersey (through Defendant DPP) since at least January 12, 2016.

69.     Kyocera America was awarded the Contract after submitting a bid in response to solicitation #16-R-24223.

70.     The Contract permits New Jersey state agencies and political subdivisions to purchase or lease copiers and multifunction devices from Kyocera America, as well as to purchase supplies and cost per copy, maintenance, and managed print services.

71.     Although the Contract's original term was from January 12, 2016 to January 11, 2018, Defendant DPP has continuously extended the Contract in the normal course of business.

72.     In all, the Contract has been extended eight times, and the current term ends on August 11, 2023.

73.     Through the Contract, Kyocera America also has business relationships with local governments across New Jersey.

### ii.      *Kyocera America Is Compliant With Federal Law.*

74.     Although Kyocera America does not provide products or services outside of the Americas, it is a subsidiary of a multinational corporation headquartered in Japan that does business across the globe.

75.     Kyocera America is a wholly owned subsidiary of Kyocera Japan, a Japanese electronics manufacturer headquartered in Osaka, Japan.

76.     Kyocera Japan's principal business is the manufacture and sale of document imaging solutions and document management systems, including color and monochrome multifunctional products as well as printers and wide format devices.  It has over 22,000 employees worldwide.

77.     Kyocera Japan has a wholly owned European subsidiary, Kyocera Europe.

78.     Kyocera Europe, in turn, has a 99% share (and Kyocera Japan has a 1% share) in a subsidiary in Russia, Kyocera Document Solutions Russia LLC ("Kyocera Russia"). Kyocera Russia is incorporated under the laws of the Russian Federation and has a principal place of business in Russia.

79.     Despite having a Russian subsidiary, Kyocera Europe has a comprehensive Export Control Compliance Program to comply with applicable export control rules and sanctions, including those sanctions imposed on Russia, the Crimea, the Donetsk People's Republic, and the Luhansk People's Republic. (Both "Republics" are occupied regions of Ukraine). Kyocera Europe complies with all European Union sanctions imposed on Russia and Belarus.

80.    In response to Russia's 2022 invasion of Ukraine, Kyocera Europe suspended deliveries of all devices to Russia.[8] Although Kyocera Russia continues to provide consumables, software, maintenance kits, and certain permissible parts to its dealers/distributors network, Kyocera Europe is not shipping any devices to it.

81.    Neither Kyocera Europe nor Kyocera Russia has any current or future planned financial investment activities involving the governments of Russia or Belarus, nor do they have any direct business with the Russian or Belarusian governments.

82.    Kyocera America does not do business or share personnel with Kyocera Russia. The two merely share a common corporate ownership through Kyocera Japan.

83.    Kyocera America is fully compliant with federal law and all federal sanctions against Russia and Belarus:

    a.   Kyocera America does not export products or provide services outside of the Americas.

    b.   Kyocera America does not sell any products or software or provide any services to any parties in Russia or Belarus.

    c.   Kyocera America does not import any items or products from Russia or Belarus.

    d.   Kyocera America is not engaged in any of the prohibited Financial Transactions covered by United States Sanctions, nor does it provide any products or services to any Specially Designated Nationals or other prohibited customers.

84.    Kyocera America and its parent company, Kyocera Japan, oppose the Russian war of aggression against Ukraine.

---

[8] Kyocera Document Solutions Europe, *"Message on the Ukraine Crisis"*, Kyocera (Oct. 3, 2022), https://www.kyoceradocumentsolutions.eu/en/about-us/contact-us/press/message-on-the-ukraine-crisis.html.

### iii. *Defendants Are Blacklisting Kyocera America Based On Its Corporate Parent's Relationship With A Subsidiary.*

85.     Under the New Jersey Act, before a State contract may be "awarded, renewed, amended, or extended," entities must certify that they are not engaged in prohibited activities in Russia and Belarus. *See* N.J.S.A. 52:32-60.1c.

86.     The New Jersey Act defines as a "prohibited activity" "any entity under common ownership or control" that has a principal place of business in Russia or Belarus.

87.     Kyocera America's parent company, Kyocera Japan, has a subsidiary, Kyocera Europe, which has a 99% share in a company called Kyocera Russia. Kyocera Japan holds a 1% share in Kyocera Russia.

88.     Despite having no direct corporate relationship with Kyocera Russia, Kyocera America could not certify that it was not engaged in a prohibited activity based on the "common ownership or control" provision of the New Jersey Act.

89.     Kyocera America could not make this certification solely because it is a subsidiary of Kyocera Japan.

90.     Kyocera America fully disclosed to the State of New Jersey its distant relationship to Kyocera Russia. A true and correct copy of Kyocera America's September 30, 2022 Certification of Non-Involvement in Prohibited Activities in Russia or Belarus Pursuant to P.L.2022, c.3 is attached as **Exhibit A**.

91.     On October 19, 2022, Defendant Division of Administration informed Kyocera America that it had made a preliminary determination that Kyocera America was engaged in prohibited activities in Russia and Belarus. A true and correct copy of the October 19, 2022 Provisional Determination of Ineligibility Pursuant to N.J.S.A. 52:32-60.1 is attached as **Exhibit B**.

-16-

92.     Defendant Division of Administration stated that it made that determination because "[Kyocera America] is under common ownership or authority with a company [Kyocera Russia] that engages in 'prohibited activities,' as defined in the Act, specifically: The company is headquartered in Russia, or has its principal place of business in Russia and/or Belarus." *Id.*

93.     Defendants also placed Kyocera America's Contract into "Pay Only" status. *Id.*

94.     On November 9, 2022, Kyocera America sent Defendant Division of Administration a letter explaining that the New Jersey Act is unconstitutional, as applied to Kyocera America, because the Act conflicts with the constitutional powers reserved to the federal government to regulate foreign commerce and govern foreign affairs, and therefore is preempted by federal law. Kyocera America demanded, among other things, that Defendant Division of Administration rescind the Contract amendment placing Kyocera America into "Pay Only" status. A true and correct copy of the November 9, 2022 letter is attached as **Exhibit C**.

95.     In this letter, Kyocera America also explained that it "opposes the war in Ukraine and is in compliance with U.S. sanctions and restrictions on business activities related to Russia, Belarus, and Ukraine. The Company's only connection to Russia and Belarus is through a distant affiliate owned by the Company's parent organization." *Id.*

96.     On November 22, 2022, Defendant DPP removed Kyocera America from "Pay Only" status and extended the Contract until January 11, 2023. A true and correct copy of Contract Amendment # 16 - Revised is attached as **Exhibit D**.

97.     On December 5, 2022, Defendant Division of Administration sent Kyocera America a letter requesting more information about Kyocera America's compliance with federal sanctions.

-17-

98.     On December 23, 2022, Kyocera America responded, explaining in more detail how it fully complies with all applicable federal sanctions and federal law. A true and correct copy of Kyocera America's December 23, 2022 letter is attached as **Exhibit E**.

99.     That same day, Defendant DPP sent Kyocera America a letter explaining it was "considering an extension of the" Contract for three months until April 11, 2023. A true and correct copy of Defendant DPP's December 23, 2022 letter is attached as **Exhibit F**.

100.    On January 6, 2023, Defendant DPP extended the Contract until April 11, 2023. A true and correct copy of Contract Amendment # 17 is attached as **Exhibit G**.

101.    On April 10, 2023, Defendant DPP extended the Contract until August 11, 2023, but – once again – placed Kyocera America on "Pay Only" status.

102.    On May 4, 2023, Defendant DPP removed Kyocera America from "Pay Only" status. A true and correct copy of Contract Amendment # 19 - Revised is attached as **Exhibit H**.

103.    Currently, the Contract extends through August 11, 2023, and there are no restrictions on Kyocera America's ability to provide equipment or services under the Contract.

104.    Throughout this process – from its initial certification of compliance until now – Kyocera America has engaged in discussions with Defendants with the purpose of securing Defendants' agreement to comply with the Constitution without requiring the intervention of the Court.

105.    During those discussions, Kyocera America has continued to explain that Kyocera America has no business relationships with Kyocera Russia or in Russia or Belarus. Kyocera America's multinational corporate parent that has sprawling operations worldwide provides the only remote link between it and Kyocera Russia.

106.     Despite these ongoing and good faith negotiations, Defendants have informed Kyocera America that it will not receive another Contract extension and will be placed on Defendant Division of Administration's Prohibited Entities List, absent a Court order enjoining Defendants from taking such actions.

107.     On July 21, 2023, the negotiations to amicably resolve this matter without the Court's intervention  failed and came to an end. Because the Contract ends on August 11, 2023, Kyocera America is faced with the immediate threat of placement on the Prohibited Entities List and the denial of the opportunity to renew or enter into a new contract based on the New Jersey Act.

108.     The sole basis that Defendants have given for placing Kyocera America on the Prohibited Entities List, and refusing to extend the Contract or enter into new contracts, is the explanation Defendant Division of Administration gave in its October 19, 2022 Provisional Determination of Ineligibility pursuant to P.L. 2022, c.3: "the Company is under common ownership or authority with a company that . . . is headquartered in Russia, or has its principal place of business in Russia and/or Belarus." Ex. B. In other words, but for Kyocera America's remote relationship with Kyocera Russia, Defendants would have extended the parties' contract as they have in the normal course of business.

109.     Defendants are placing Kyocera America on the Prohibited Entities List and barring it from contracting with New Jersey State agencies and governmental entities, despite its full compliance with all federal laws and regulations related to the sanctions imposed on Russia and Belarus.

110.   Kyocera America will suffer immediate and substantial harm if Defendants place Kyocera America on the Prohibited Entities List and refuse to renew the Contract or prohibit Kyocera American from entering into new contracts with the State based on the New Jersey Act.

111.   Defendants' refusal to extend the Contract– as they have done in the normal course eight times – or to permit Kyocera America to bid on new State contracts will result in Kyocera America losing significant business in New Jersey.

112.   Additionally, if placed on Defendant Division of Administration's Prohibited Entities List, Kyocera America's business interests throughout the United States will be jeopardized.

113.   Kyocera America will be branded with a Scarlet Letter, irreparably impairing its reputation and preventing it from certifying to other state governments and the Federal Government that it is not barred from doing business in another jurisdiction.

114.   That will leave Kyocera America unable to effectively compete for other state and federal government contracts – a significant portion of its business in the United States.

115.   All those harms will be visited on Kyocera America, despite the fact that it has condemned Russia's war of aggression against Ukraine and does no business in Russia or Belarus or with those countries' governments.

116.   In addition, if Defendants carry out their actions, the public may wrongly believe that Kyocera America supports Russia's war against Ukraine and the Russian or Belarusian governments, or otherwise engages in inappropriate activity in Russia or Belarus.

117.   That public misperception could permanently taint Kyocera America's reputation with devastating results, causing not only government agencies, but also private entities and individuals from doing business with Kyocera America.

## COUNT I

**The New Jersey Act, as applied to Kyocera America, is preempted by the Supremacy Clause, Article VI, cl. 2, of the Federal Constitution, and It Violates the Foreign Commerce Clause, Article I, § 8, cl. 3**

**(as to Defendants Truppa and Davis)**

118.    Kyocera America repeats the allegations of the foregoing paragraphs of its Verified Complaint as if fully set forth herein.

119.    The Federal Government has primary responsibility for shaping and executing this nation's policy in foreign affairs. *See, e.g., Zschernig v. Miller,* 389 U.S. 429, 436 (1968); *Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363 (2000).

120.    The United States Constitution delegates to Congress the exclusive power "[t]o regulate Commerce with foreign Nations." U.S. Const. art. I, § 8, cl. 3.

121.    This power is entrusted to Congress to prevent individual states from enacting a patchwork of conflicting laws that undermines a singular national policy in regulating commerce with foreign nations.

122.    In exercising its authority over foreign commerce in relation to Russia's hostile actions in Ukraine, Congress has enacted legislation.

123.    Congress passed the International Emergency Economic Powers Act and other federal legislation in response to Russia's malignant activities in Ukraine preceding the invasion. *See* 50 U.S.C. §§ 1701–09.

124.    In enacting the International Emergency Economic Powers Act, Congress granted the President wide discretion to set, maintain, and abrogate economic sanctions. *Id.*

125.    The Executive Branch responded by promulgating federal regulations sanctioning Russia.

126. After Russia's invasion of Ukraine, Congress exercised its authority under the Foreign Commerce Clause by banning Russian oil and suspending the normal operation of the tariff laws by stripping Russia and Belarus of their Most-Favored Nation status.

127. Congress has further exercised its constitutional power by delegating to the President authority to issue sanctions related to commerce with Russia.

128. Congress granted the President discretion in both the Ending Importation of Russian Oil Act and the Suspending Normal Trade Relations with Russia and Belarus Act to decide when, and how, to lift the sanctions imposed in those Acts. *See* Ending Importation of Russian Oil Act, Pub. L. No. 117-109, 136 Stat. 1154; Suspending Normal Trade Relations with Russia and Belarus Act, Pub. L. No. 117-110, 136 Stat. 1159.

129. In his role as Chief Executive and Commander-in-Chief, the President is the leading expositor of United States policy in foreign affairs.

130. In response to Russia's occupation of Crimea and other hostile activities in Ukraine, President Obama issued Executive Orders 13660, 13661, 13662, 13685, 13883, and 13849 to meet this nation's security needs.

131. After the full-scale invasion of Ukraine, President Biden issued numerous Executive Orders, including Executive Orders 14024, 14039, 14065, 14066, 14068, and 14071.

132. Those Executive Orders collectively impose economic sanctions on individuals, entities, and economic sectors that are contributing to Russia's War in Ukraine and Russia's aggressive and inimical foreign activities.

133. President Biden has exercised his executive powers, in conjunction with our allies, in response to the security threat posed to the world order by the Russian invasion of Ukraine. *See United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936).

134.    Officers of the United States, including the Secretary of State and the Secretary of the Treasury, implemented the President's policy decisions by promulgating regulations found at 31 C.F.R. parts 587 and 589, which provide definitional clarity to the Executive Orders, specify what conduct is prohibited, and establish a system of licenses for entities who qualify to engage in certain business that would otherwise violate the Executive Orders.

135.    In implementing this nation's foreign policy objectives, and in conjunction with our allies, Congress and the President have imposed a system of escalating sanctions against Russia and Belarus with the goal of compelling these outlaw nations to conform with international norms.

136.    The federal sanctions do not amount to a total embargo.

137.    No federal law, federal regulation, or Presidential Executive Order prohibits a company incorporated and based in the United States – that does no business in Russia or Belarus or with those countries' governments – from doing business in any state, including New Jersey, merely because that company's international parent company has a subsidiary in Russia.

138.    Kyocera America is in full compliance with the federal sanctions scheme imposed by Congress and the President, notwithstanding that its multinational parent company has a subsidiary in Russia.

139.    The Supremacy Clause provides that the federal "Constitution shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution of laws of any State to the contrary notwithstanding." U.S. Const. art. VI, cl. 2.

140.    A hodgepodge of state laws interfering with the federal government's authority to singularly direct a coherent policy governing commerce with foreign nations is precisely what the Foreign Commerce Clause and the Supremacy Clause were intended to interdict.

141.    The New Jersey Act conflicts with the very purpose of the Constitution's Foreign Commerce Clause because it undermines the Federal Government's ability to speak "with one voice when regulating commercial relations with foreign governments." *See Japan Line, Ltd. v. Los Angeles Cnty.*, 441 U.S. 434, 449 (1979).

142.    The New Jersey Act imposes sanctions on companies, such as Kyocera America, beyond those imposed by Congress and the President and therefore conflicts with this nation's carefully delineated sanctions policy directed toward Russia and Belarus.

143.    The New Jersey Act conflicts with Congress' delegation of authority to the President to determine the outer limits of the United States' sanction scheme.

144.    The New Jersey Act definition of prohibited activity may interfere with the Federal Government's fine-tuned, calibrated diplomatic policy in imposing specific sanctions and withholding others while dealing with the current crisis wrought by Russia's invasion.

145.    New Jersey's statutorily prohibited activities, moreover, conflict with the culpability-based federal sanctions scheme, which targets entities and sectors playing a direct role in the Russian war effort. Therefore, the New Jersey Act may cause confusion among the United States' allies concerning the scope of this nation's sanctions.

146.    Defendant Division of Administration is placing Kyocera America on its Prohibited Entities List and barring it from entering contracts with State agencies, even though Kyocera America does no business in Russia or Belarus and has condemned Russia's war of aggression in Ukraine, merely because it belongs to a sprawling multinational corporation that happens to have an unrelated subsidiary in Russia.

147.    Defendant DPP, in turn, is not renewing Kyocera America's existing Contract with the State and refusing to enter into new contracts with Kyocera America in the future on the basis of Kyocera America's placement on the Prohibited Entities List.

148.    Kyocera America exists solely to do business in the United States and the Americas.

149.    But for the New Jersey Act's definitional overbreadth, Kyocera America would face no legal impediment to the continuation of the Contract or its right to do business with New Jersey.

150.    The New Jersey Act "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," which invested the "President with statutory authority to act for the United States in imposing sanctions." *See Crosby*, 530 U.S. at 373, 375 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

151.    Those portions of the New Jersey Act that deny Kyocera America the ability to contract with New Jersey state agencies conflict with federal law and are preempted and unconstitutional as applied to Kyocera America. *See Crosby*, 530 U.S. at 372.

152.    Pursuant to *Ex Parte Young*, 209 U.S. 123 (1908) and its progeny, this Court has the power to enjoin Defendant Truppa and Defendant Davis from enforcing the unconstitutional elements of the New Jersey Act, as they apply to Kyocera America.

## COUNT II
**The New Jersey Act Violates Foreign Commerce Clause As It Impermissibly Affects Foreign Commerce**

**(as to Defendants Truppa and Davis)**

153.    Kyocera America repeats the allegations of the foregoing paragraphs of its Verified Complaint as if fully set forth herein.

154.    The New Jersey Act not only violates the Foreign Commerce Clause by interfering with clear federal directives on the Russian sanctions, but as applied to Kyocera America, the Act

discriminates against foreign commerce as it blurs the line between domestic corporations and tangentially related sister companies doing business in other parts of the world.

155.    The New Jersey Act requires corporations, like Kyocera America, to either abandon any connection with Kyocera Japan or abandon doing business with the State of New Jersey.

156.    Similarly, the New Jersey Act also impermissibly regulates foreign commerce by forcing foreign entities with related companies in Russia and Belarus, such as Kyocera Japan (parent company of Kyocera America), to either comply with the Act's requirements by divesting its interest in its Kyocera Russia or face immense economic harm.

157.    Because the overly broad portions of the New Jersey Act impermissibly discriminate against foreign commerce and interfere with the ability of the Federal Government to speak with one voice on issues of foreign commerce, the overly broad portions of the New Jersey Act violate the Foreign Commerce Clause as applied to Kyocera America.

## COUNT III
### Declaratory Judgment Pursuant to 28 U.SC. § 2201
### (as to all Defendants)

158.    Kyocera America repeats the allegations of the foregoing paragraphs of its Verified Complaint as if fully set forth herein.

159.    The Declaratory Judgment Act authorizes this Court to declare the rights and legal relations of all parties to this matter.

160.    As described above, the New Jersey Act's overly broad definition of prohibited acts is in conflict with the tightly calibrated federal sanctions scheme and constitutes an impermissible regulation of foreign commerce that is unconstitutional as applied to Kyocera America.

161.    The Declaratory Judgment Act authorizes this Court to declare the New Jersey Act's preempted portions unconstitutional as applied to Kyocera America.

162.   The Declaratory Judgment Act authorizes this Court to declare the New Jersey Act unconstitutional under the Foreign Commerce Clause and the Supremacy Clause as applied to Kyocera America.

163.   Thus, the overly broad portions of the Act should be declared unconstitutional as applied to Kyocera America.

**PRAYER FOR RELIEF**

**WHEREFORE,** Kyocera America respectfully demands judgment:

(1)   Declaring that N.J.S.A. 52:32-60.1, as applied to Kyocera America, is an unconstitutional violation of the Foreign Commerce Clause and Supremacy Clause because its provisions extend beyond and conflict with the current Federal regulation of foreign commerce;

(2)   Declaring that those provisions of N.J.S.A. 52:32-60.1, as applied to Kyocera America, in conflict with Federal law are preempted;

(3)   Enjoining Defendant Truppa from enforcing the provisions of N.J.S.A. 52:32-60.1 that violate the foregoing constitutional provisions as applied to Kyocera America;

(4)   Enjoining Defendant Truppa from adding Kyocera America to the list of entities engaged in "prohibited activities" in Russia or Belarus under N.J.S.A. 52:32-60.1;

(5)   Enjoining Defendant Davis from refusing to extend the Contract; refusing to otherwise contract with Kyocera America in the future; or taking any other adverse action against Kyocera America based on the provisions of N.J.S.A. 52:32-60.1 that violate the foregoing constitutional provisions as applied to Kyocera America;

-27-

(6)    Awarding all costs and attorneys' fees incurred in this action; and

(7)    Awarding any other relief this Court deems proper.

**LOWENSTEIN SANDLER LLP**

Dated:  July 28, 2023

By: /s/ Christopher S. Porrino
Christopher S. Porrino, Esq.
Barry T. Albin, Esq.
Kent D. Anderson, Esq.
Wayne W. Fang, Esq.
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2400
Email: CPorrino@lowenstein.com
Email: BAlbin@lowenstein.com
Email: KAnderson@lowenstein.com
Email: WFang@lowenstein.com
*Attorneys for Plaintiff*
*Kyocera Document Solutions America,*
*Inc.*

## <u>DESIGNATION OF TRIAL COUNSEL</u>

Christopher S. Porrino, Esq. is hereby designated as trial counsel for Plaintiff Kyocera

Document Solutions America, Inc. in the within matter.


Dated:  July 28, 2023

By: /s/ Christopher S. Porrino
     Christopher S. Porrino, Esq.
     Barry T. Albin, Esq.
     Kent D. Anderson, Esq.
     Wayne W. Fang, Esq.
     **LOWENSTEIN SANDLER LLP**
     One Lowenstein Drive
     Roseland, New Jersey 07068
     Telephone: (973) 597-2500
     Facsimile: (973) 597-2400
     Email: CPorrino@lowenstein.com
     Email: BAlbin@lowenstein.com
     Email: KAnderson@lowenstein.com
     Email: WFang@lowenstein.com
     *Attorneys for Plaintiff*
     *Kyocera Document Solutions America,*
     *Inc.*

## <u>LOCAL CIVIL RULE 11.2 CERTIFICATION</u>

I hereby certify that the matter in controversy is not the subject of any other action or proceeding pending in any court or arbitration.

Dated:  July 28, 2023

By: /s/ Christopher S. Porrino
  Christopher S. Porrino, Esq.
  Barry T. Albin, Esq.
  Kent D. Anderson, Esq.
  Wayne W. Fang, Esq.
  **LOWENSTEIN SANDLER LLP**
  One Lowenstein Drive
  Roseland, New Jersey 07068
  Telephone: (973) 597-2500
  Facsimile: (973) 597-2400
  Email: CPorrino@lowenstein.com
  Email: BAlbin@lowenstein.com
  Email: KAnderson@lowenstein.com
  Email: WFang@lowenstein.com
  *Attorneys for Plaintiff*
  *Kyocera Document Solutions America, Inc.*

## VERIFICATION

I, Oscar Sanchez, of full age, hereby verify:

1.       I am the President and CEO of Plaintiff Kyocera Document Solutions America, Inc.

2.       I have read the forgoing Verified Complaint, and, except where matters are stated to be based upon information and belief, I verify that the allegations contained therein are true, to the best of my personal knowledge and belief.

3.       As to the allegations made upon information and belief, I believe those to be true.

I verify, under the penalty of perjury, that the foregoing statements are true and correct. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: July 25, 2023

Oscar Sanchez

31

## CERTIFICATION OF SERVICE

I, **Christopher S. Porrino Esq.**, of full age, hereby certify:

1.     I am a Partner at Lowenstein Sandler LLP, located at One Lowenstein Drive, Roseland, New Jersey 07068, authorized to practice law in the State of New Jersey. My law firm represents Plaintiff Kyocera Document Solutions America, Inc. ("Plaintiff").

2.     I hereby certify that on the 28th day of July 2023, I caused a copy of Plaintiff's (1) Memorandum of Law in Support of Plaintiff's Application for a Temporary Restraining Order and Preliminary Injunction, (2) Verified Complaint, (3) Order to Show Cause, and (4) this Certification of Service to be served on Defendants' counsel of record by electronic service and e-mail.

I certify that the foregoing statements made by me are true. I understand that if the foregoing statements made by me are willfully false, I may be subject to punishment.

Dated:  July 28, 2023

By: /s/ Christopher S. Porrino
   Christopher S. Porrino, Esq.
   Barry T. Albin, Esq.
   Kent D. Anderson, Esq.
   Wayne W. Fang, Esq.
   **LOWENSTEIN SANDLER LLP**
   One Lowenstein Drive
   Roseland, New Jersey 07068
   Telephone: (973) 597-2500
   Facsimile: (973) 597-2400
   Email: CPorrino@lowenstein.com
   Email: BAlbin@lowenstein.com
   Email: KAnderson@lowenstein.com
   Email: WFang@lowenstein.com
   *Attorneys for Plaintiff*
   *Kyocera Document Solutions America, Inc.*